

2007 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

12-14-2007

# Benedetto v. Comm Social Security

Precedential or Non-Precedential: Non-Precedential

Docket No. 06-4185

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2007

Recommended Citation

"Benedetto v. Comm Social Security" (2007). *2007 Decisions.* Paper 62.
http://digitalcommons.law.villanova.edu/thirdcircuit_2007/62

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2007 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———————

No. 06-4185

———————

VICKI BENEDETTO,
                                        Appellant

v.

COMMISSIONER OF SOCIAL SECURITY

———————

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
(D.C. Civil No. 05-cv-03004)
District Judge:  The Honorable William G. Bassler

———————

Submitted Under Third Circuit LAR 34.1(a)
November 27, 2007

———————

Before: BARRY, FUENTES and GARTH, Circuit Judges

(Opinion Filed: December 14, 2007)

———————

OPINION

———————

BARRY, Circuit Judge

        Appellant Vicki Benedetto appeals the order of the District Court affirming the

decision of the Commissioner of Social Security denying her claim for disability

insurance benefits.  We will affirm.

Because we write only for the parties, familiarity with the facts is presumed, and we set forth only those facts that are relevant to our analysis.

On January 23, 2000, Benedetto injured her back while working as a grocery store clerk when she attempted to lift a heavy bag of dog food. As a result of this accident, she alleges that she suffered, and continues to suffer, constant and severe pain in her lower back and legs. She stopped working immediately following the accident. From the period January 23, 2000 to July 2002, she received full worker's compensation benefits, and received partial worker's compensation benefits until April 2003.

After various medical treatments failed to relieve her pain, Benedetto underwent lumbar spine surgery in August 2001 but continued to experience pain even after the surgery. Beginning in late 2001, Benedetto was treated by Dr. David Bullek, M.D., an orthopedist. On the recommendation of Dr. Bullek, between January 3, 2002 and June 7, 2002 Benedetto underwent physical therapy at HealthSouth. Also on the recommendation of Dr. Bullek, between February 1, 2002 and April 25, 2003 she received pain management treatment under the care of Dr. Andrew Kaufman, M.D.

Benedetto applied for disability insurance benefits on June 4, 2002. Her application was denied, and on August 25, 2003 a hearing was held before an Administrative Law Judge ("ALJ"). On September 18, 2003, the ALJ held that Benedetto "was disabled for the closed period of January 23, 2000 through July 3, 2002," but

"[a]fter July 3, 2002 she was not disabled within the meaning of the Social Security Act." (A.R. 13.) In reaching his decision, the ALJ applied the five-step analysis set forth in 20 C.F.R. § 404.1520,[1] and found that after July 3, 2002 she was able "to perform her past relevant work as a grocery cashier," and therefore was not disabled. (A.R. 18.)

Benedetto filed an action in the District Court seeking review of the ALJ's decision. The District Court affirmed, holding that the ALJ's decision was supported by substantial evidence. Benedetto filed a timely notice of appeal.

## II.

The District Court had jurisdiction pursuant to 42 U.S.C. § 405(g). We have jurisdiction pursuant to 28 U.S.C. § 1291, and exercise plenary review over the District Court's decision. *McCrea v. Comm'r of Soc. Sec.*, 370 F.3d 357, 359 (3d Cir. 2004). "We review the ALJ's application of the law de novo, and review the ALJ's factual findings for substantial evidence." *Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 91 (3d Cir. 2007) (citations omitted). "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' Although substantial

---

[1] Under the five-step analysis, the Commissioner determines:
   whether an applicant: (1) is engaged in substantial gainful activity; (2) suffers from an impairment or combination of impairments that is "severe"; (3) suffers from an impairment or combination of impairments that meets or equals a listed impairment; (4) is able to perform his or her past relevant work; and (5) is able to perform work existing in significant numbers in the national economy.
*McCrea v. Comm'r of Soc. Sec.*, 370 F.3d 357, 360 (3d Cir. 2004).

evidence is more than a mere scintilla, it need not rise to the level of a preponderance."

*McCrea*, 370 F.3d at 359-360 (quoting *Newell v. Comm'r of Soc. Sec.*, 347 F.3d 541, 545 (3d Cir. 2003)).

### III.

Benedetto advances three arguments in support of her contention that the ALJ's decision is not supported by substantial evidence. First, she argues that the ALJ's residual functional capacity assessment (*i.e.*, the finding that after July 3, 2002, she was able to perform her past relevant work as a grocery store clerk) failed to consider all the relevant evidence and accorded too much weight to the testimony of the medical examiner, Dr. Marvin Chirls, M.D., whom she describes as "a maverick, retired, former orthopedic surgeon, twice banished for weird, iconoclastic observations consistently at odds with the medical evidence."[2] (Appellant's Br. 12.) Despite this rhetoric, however, we find that the ALJ based his residual functional capacity assessment on his review of the entire record, including: (1) Dr. Bullek's December 31, 2001 conclusion that there was no objective evidence to explain Benedetto's pain; (2) Dr. Bullek's July 3, 2002

---

[2] We take this opportunity to express our displeasure with Benedetto's counsel on appeal, Mr. Alter, for his repeated *ad hominem* attacks on Dr. Chirls in the brief he has filed with this Court. We note that, since counsel filed his brief, we have referred him to the Court's Standing Committee on Attorney Discipline as a result of his history of engaging in similar unprofessional conduct before this Court. *See Cruz v. Comm'r of Soc. Sec.*, No. 06-2808, 2007 WL 2197050, at *6-7 (3d Cir. Aug. 1, 2007). We expect that counsel will in the future refrain from engaging in conduct unbecoming a member of the bar of this Court.

4

conclusion that Benedetto was capable of returning to work either as "a Grocery Clerk with altered duty status...[or] any job in the Light-Medium work category with similar action requirements" (A.R. 312-13); and (3) Dr. Chirls' conclusion that there was no objective evidence to explain Benedetto's pain and that she was capable of returning to work as of July 2002. Because a "reasonable mind" could find that this evidence is "adequate to support [the ALJ's] conclusion," *McCrea*, 370 F.3d at 359-360, substantial evidence supports the ALJ's residual functional capacity assessment.

Benedetto next argues that the ALJ failed to seriously consider her subjective complaints of pain and important evidence supporting those complaints in concluding that after July 3, 2002 she was able to perform her past relevant work. We disagree.

The ALJ found that Dr. Kaufman's reports dated May 3, 2002, June 24, 2002, September 11, 2002, October 4, 2002 and December 3, 2002, viewed together, indicated that Benedetto's pain and functioning improved throughout 2002, owing largely to her physical therapy and exercise program. The ALJ concluded that "[w]hile the claimant may have some residual pain and limitations from her prior injury and surgery, all testing and treatment indicate that she did experience improvement after successful surgery in her ability to move about, flex her spine, toe and heel walk, and lift weights." (A.R. 16.) Based upon our review of the record, this conclusion appears reasonable. Accordingly, we find that the ALJ properly considered Benedetto's complaints of pain in reaching his conclusion that she was capable of performing her past relevant work after July 3, 2002.

5

To the extent that the ALJ discounted her complaints of pain, we conclude that he did so based on ample contrary medical evidence.[3]

Finally, Benedetto alleges that the ALJ failed to give her an opportunity to testify in full at her hearing. We find no merit to this argument. As noted by the District Court, Benedetto testified about her injury, treatment, medication and pain. In addition, the transcript of the hearing reflects that when the ALJ asked whether he could "go to the doctor," *i.e.* hear the testimony of Dr. Chirls, Benedetto's counsel replied "[s]ure." (A.R. 377.) Later, after lengthy and contentious discussion between counsel, the ALJ, and the doctor, counsel said "I just have a closing, Judge." (A.R. 429.) After counsel began his closing argument, he interrupted the argument and stated: "we didn't take any testimony from the claimant, by the way, Judge, are we going to hold a supplemental hearing for that?" (A.R. 430.) The ALJ neither agreed to hold a supplemental hearing nor refused to do so, and the subject never again came up. If Benedetto wished to testify further, she had ample opportunity to do so prior to counsel's closing argument.[4]

---

[3] In addition to Dr. Kaufman's reports, the conclusions of Drs. Bullek and Chirls that there was no objective evidence to explain Benedetto's pain also constitute contrary medical evidence relating to her complaints of pain.

[4] Although the record is somewhat muddled, near the end of the hearing the ALJ stated: "We don't need anymore, do we, on this case? I think we've exhausted our discussion." Following a short discussion, the ALJ then noted that "we're not getting any new evidence here, that's all." Benedetto's counsel replied: "Well, no, I mean the same evidence is in the file." However, rather than seek to introduce additional testimony from Benedetto at that point, Benedetto's attorney simply stated "I just have a closing, Judge." (A.R. 429.)

**IV.**

For the foregoing reasons, we will affirm the order of the District Court.